## FOLEY *v.* COMSTOCK.[1]

1. INTEREST—METHODS OF COMPUTATION—PARTIAL PAYMENTS.

In an action to recover an alleged overcharge of interest upon notes on which partial payments were made from time to time, error in permitting plaintiff's witness to place before the jury, over defendant's objection, a computation made on a basis not approved in this State, will be *held* prejudicial, though the court, in its final instructions, correctly stated the Michigan rule, unless it clearly appears from the verdict that it was not affected thereby.

2. SAME—SPECIAL AGREEMENT.

An agreement to allow interest on payments on a note until fully paid means only that interest shall cease from date of payment.

3. CONTRACTS—DURESS—EVIDENCE.

Under a claim that plaintiff's contract to pay a certain amount for sawing lumber was made under duress, he should not be allowed to testify that he could have had it sawed for a certain less amount, there being no evidence tending to show legal duress.

4. TRIAL—EXCEPTIONS—IMPEACHMENT OF WITNESSES.

Where defendant objected to impeaching testimony's being received unless his witness should be recalled, and his attention directed to the conversation by which he was sought to be impeached, and plaintiff's counsel thereupon stated that, if necessary, he would recall the witness, which the court said might be done after the impeaching witness was through, and defendant accordingly held his exception until, by plaintiff's calling a third witness, it was evident that the omission was not to be supplied, his exception then taken should be treated as covering the original ruling.

Error to Alpena; Kelley, J. Submitted November 17, 1899. Decided December 12, 1899.

*Assumpsit* by Nicholas J. Foley against Andrew W.

---

[1] Rehearing denied February 7, 1900.

Comstock and another for the breach of a lumber contract. From a judgment for plaintiff, defendants bring error. Reversed.

*Joseph H. Cobb*, for appellants.

*J. D. Turnbull* (*L. G. Dafoe* and *A. E. Sharpe*, of counsel), for appellee.

MONTGOMERY, J. This action was in *assumpsit* for breach of a contract. The declaration contains a special count averring that the defendants undertook to manufacture and pile certain lumber for the plaintiff in proper manner; that defendants, in performing such undertaking, destroyed large portions of the lumber by cutting the same into slabs and worthless lumber; and that it was improperly piled, so as to become stained. The declaration also contains the common counts in *assumpsit*. It appeared by the testimony of the plaintiff that the defendants, beginning in 1892, loaned him money from time to time on the security, in part, of a real-estate mortgage dated December 12, 1892, consideration of which was $30,-000, which recited that it was given to secure the payment of money then owing to the defendants, and also to secure the repayment of such further advances as defendants should make, up to the amount stated. It provided that "all money so advanced shall be evidenced by certain promissory notes bearing interest at seven per cent. per annum, and all said notes shall be made payable within one year from the date thereof." Notes were given after this date for advances, running, one two months, one three months, one five months, and one six months. Payments were made upon these notes from time to time. One of the plaintiff's claims was for the alleged overcharge of interest on these notes. The plaintiff recovered a verdict of $8,040.33, and defendants bring error.

The rulings complained of are of two classes: (1) Such as affect the plaintiff's claim to recover interest money claimed to have been improperly exacted from him; and

(2) such rulings as affect his right to recover damages for the improper manufacture and piling of the lumber.

1. The court, in the final charge to the jury, appears to have correctly stated the rule as to the computation of interest laid down by this court in *Wallace* v. *Glaser*, 82 Mich. 190 (21 Am. St. Rep. 556); but evidence had been admitted of a computation made on an entirely different basis, and the court had stated in the presence of the jury that the defendants were not entitled to charge plaintiff "interest on 90-day installments,— short interest." This ruling was based on a construction of the original security contract, by which it was provided that the money advanced should be evidenced by promissory notes bearing interest at 7 per cent. per annum, and all of said notes, with the renewals thereof, should be made payable within one year from the date thereof. We think this ruling was erroneous. The parties themselves, by the giving by the plaintiff and acceptance by the defendants of notes running a less time than one year, placed their own construction upon the phrase "payable within one year from the date thereof," descriptive of the notes to be given. The injustice of the method of computation adopted by plaintiff's witness may be illustrated by an example: One of the notes made by plaintiff was dated November 22, 1893, due six months after date, and was for $11,900, with interest at 7 per cent. On June 27, 1894, a payment of $499.28 was made, which, it will be seen, was the amount of interest due. By the computation given to the jury by this witness, plaintiff was allowed interest on this payment of interest up to the date of final adjustment, which amounted to $120.60, yet he had not paid the interest on his note a day earlier than he had agreed to do. The injustice of this method is apparent. It is true, plaintiff testified to an agreement to allow him interest on payments on a note that was not all paid, but this would mean no more than that interest would cease from the date of payment. As it is not clear that the ruling above referred to did not affect the verdict, we

must regard the error as mischievous. Plaintiff's counsel, however, state that, rather than suffer a reversal on this ground, they are willing to consent to a reduction of the judgment. It becomes necessary, therefore, to consider whether there was error affecting the other branch of the case.

2. It appears that the contract between the parties for the manufacture of the lumber in question was written, and provided for payment by plaintiff of a saw-bill of $2.50 per 1,000, and in 1894 of $2.75 per 1,000. Plaintiff, under a claim that the contract was made under duress, was permitted to testify that he could have had the lumber sawed for $2.35. There was no testimony offered which tended to show legal duress. No attempt has ever been made to rescind. On the contrary, this contract has been fully performed, and the saw-bill paid by plaintiff's notes from time to time. The circuit judge, in his charge, instructed the jury that the defendants were entitled to the contract price. The testimony had undoubtedly served another purpose, however, and what the purpose was is too plain to require extended remark. The testimony should not have been received.

One Eales had been a witness for the defendants. Plaintiff called in rebuttal Robert Brabant, who was asked as to a conversation with Eales, and to state what it was. Defendants' counsel objected on the ground that Eales' attention had not been called to the subject. The court said, "I don't think it was." Plaintiff's counsel then said: "Well, if it is necessary, I can call him back. *The Court:* You may call him after you get through with this witness." The witness then detailed an alleged conversation with Eales, which would indicate that Eales was attempting to influence the witness in the matter of giving his testimony. After the witness left the stand, plaintiff's counsel called another witness, when the defendants' counsel interposed, and the following colloquy occurred:

"*Mr. Cobb:* Your honor, before you put Mr. Foley on

the stand, I insist on Mr. Eales being called back, in reference to this conversation with Brabant.

" *The Court:* Do you want to call him? Better wait until he gets through.

" *Mr. Cobb:* No; I made my objection that Mr. Eales' attention had not been called to that, and the court said that—

" *The Court:* Proceed with the examination of this witness.

" *Mr. Cobb:* Give me an exception."

Counsel for the plaintiff say that there was no exception to the giving of Brabant's evidence. We think it is but fair to defendants' counsel to treat the exception which he noted as covering the ruling. On assurance that the omission would be supplied, he held his exception in abeyance until it was manifest that the omission to call Eales' attention to the subject was not to be supplied, and then noted his exception. The necessity for calling Eales' attention to the subject is clear. *People* v. *Gallagher,* 75 Mich. 512; *Koehler* v. *Buhl,* 94 Mich. 496.

None of the other questions presented are likely to arise on a new trial, and do not call for discussion.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.