PEOPLE v. MALOY.

1. WITNESSES—EVIDENCE—CRIMINAL LAW—PRIVILEGE—TESTIFYING
AGAINST SELF—CONSTITUTIONAL LAW.

Testimony by a witness in a divorce case in response to a
subpœna, without being advised of his constitutional
rights, was not admissible in a prosecution against him
for adultery without his consent, being in violation of his
right to exemption from testifying against himself under
the 5th Amendment to the Constitution of the United
States, and article 2, § 16, Constitution of Michigan.
OSTRANDER and STONE, JJ., dissenting.

2. CRIMINAL LAW—EVIDENCE—CONFESSION—MOTION TO STRIKE.

Where no objection was made to the sheriff testifying to
an alleged confession of defendant in a criminal prose-
cution, made in response to questions by the prosecuting
attorney in presence of the sheriff, the denial of a motion,
made the next day, to strike out the testimony, was not
reversible error.

3. SAME—EVIDENCE—LETTERS AND PAPERS—IDENTIFICATION.

Letters and papers found in a room occupied by defendant
should not have been offered in evidence until properly
identified.

4. SAME—CONDUCT OF COUNSEL—TRIAL—WITNESSES.

The conduct of the prosecuting attorney, in a prosecution
for adultery, in indorsing upon the information the name
of the woman who had been complained against with the
defendant, and calling her as a witness against him, thus
forcing her to claim her constitutional privilege, while
showing great zeal, did not amount to reversible error.

Exceptions before judgment from Ottawa; Cross, J.
Submitted October 17, 1918. (Docket No. 120.) De-
cided February 7, 1919.

Claude Maloy was convicted of adultery. Reversed.

Louis H. Osterhous and John M. Dunham, for ap-
pellant.

See note in 4 L. R. A. [N. S.] 1144.

*Fred T. Miles,* Prosecuting Attorney, for the people.

MOORE, J. The circuit judge charged the jury in part as follows:

"In the information filed in this case the people charge this respondent, Claude Maloy, with the offense of adultery. It is the claim of the people that on the 23d day of February, 1918, the respondent Claude Maloy left Grand Rapids with Mrs. Jessie Emmons and that they went to Holland in this county and there went to the Hotel Bristol and engaged a room and remained there in the room Saturday and Sunday nights and until Monday morning; that there was only one bed in the room and that the parties there had sexual intercourse and thereby committed adultery; that the parties were not married to each other; that Claude Maloy was at the time a married man, and had a lawful wife, and that the said Jessie Emmons was at the time the wife of Hayes Emmons, and the people claim that the respondent is guilty of the offense of adultery, as charged in the information in this case.

"It is the claim of the respondent in this case not only that the allegations made by the people in the complaint, warrant and information filed in this case are false and untrue, but that there has been a total failure of proof upon those allegations.

"It is the claim of the respondent that he did not commit the crime charged in the information at the time and in the manner and form therein charged. He claims further that this prosecution was instigated by Hayes Emmons, the husband of Jessie Emmons, who was also arrested and charged with the same crime or participating in the same crime as respondent, and that the said Hayes Emmons seeks conviction of the respondent in this case and the said Jessie Emmons for the sole purpose of defeating her claim for permanent alimony or any right to the property now held by the said Hayes Emmons.

"The respondent claims further and there is no dispute upon the fact that a divorce case is now pending in the circuit court for the county of Kent, in chancery, wherein the said Jessie Emmons is the plaintiff, and the said Hayes Emmons is defendant, and that

said suit was begun sometime in the month of March, 1918, and prior to the complaint in this case. That in the divorce case the respondent is represented by William J. Barnard of Paw Paw, who was his attorney in a former divorce case, and it is the claim of the respondent that the said attorney acting for his client, endeavored to get said Jessie Emmons to sign off and release her interest in her husband's property prior to the filing of the said divorce case, and when she refused, threatened her with arrest for adultery; that the only motive in this case is to convict this respondent and the said Jessie Emmons so that Hayes Emmons may not have to pay any alimony in said divorce case."

The jury returned a verdict of guilty. The case is here upon exceptions before sentence.

The assignments of error raise three questions:

1. Was the testimony of the respondent given, because subpœnaed as a witness in the divorce case, competent evidence in this trial upon the main case?

2. Was the so-called confession made to Sheriff Dornbos competent?

3. Did the conduct of the prosecuting attorney throughout the trial of this case constitute prejudicial error?

The record shows an anomalous condition. Mr. Maloy was subpœnaed as a witness in the divorce case by the defendant. He was called as a witness by the plaintiff. He had given 15 pages of testimony before there was a suggestion that he had the constitutional right to claim privilege from testifying. All that occurred then was a suggestion.

"*The Court:* I suppose he has a right to claim his constitutional privilege at any time."

There is nothing to indicate that he was advised of what his constitutional rights were or that he had knowledge of what they were. Indeed counsel on both sides seemed eager to get his testimony and neither of them objected to the testimony.

Testimony taken under these circumstances was per-

mitted to be read in the criminal case, not by way of impeachment, for Mr. Maloy was not sworn in that case, but as substantive proof of a criminal offense, thus making him against his protest a witness against himself.

Mr. Maloy was in attendance upon court in the divorce case in response to a subpœna. He was sworn as a witness. His testimony was not voluntarily given. Before it could be used as an admission against him in a criminal case not yet in existence it must appear that he was advised of his constitutional rights. This does not appear. See Constitution of United States, 5th Amendment; Michigan Constitution, art. 2, § 16; *People* v. *Lauder*, 82 Mich. 109; *In re Mark*, 146 Mich. 714; *In re Allison*, 156 Mich. 34; *People, ex rel. Taylor*, v. *Forbes*, 143 N. Y. 219 (38 N. E. 303). It was error to admit this testimony.

2. Was the testimony of Sheriff Dornbos competent? This testimony was given without objection. The cross-examination drew out the fact that respondent knew he was talking with the prosecuting attorney in the presence of the sheriff, and he was told he need not answer the questions unless he wanted to. The next day a motion was made to strike out the testimony. This was not done. There is no doubt the court if requested would have charged the jury properly as to how they should regard the evidence. See Tiffany's Criminal Law, p. 633. As to this feature of the case the record does not show reversible error.

3. Did the conduct of the prosecuting attorney throughout the trial of the case constitute prejudicial error? The claim that it did is based upon the calling of Mrs. Emmons as a witness and the offering in evidence of certain letters and written papers found in the drawer of a piece of furniture in a room which had been used by the respondent.

We quote from the brief of counsel:

"Why did the prosecutor indorse upon the information the name of Jessie Emmons, and call her as a witness on behalf of the people? She was complained against with the respondent, although they were informed against singly. He knew that she would not take the stand and give testimony favorable to the people. She must be presumed to have the average degree of intelligence. It was done so questions might be asked of her before the jury and compel her or her counsel to make a claim of privilege. This would and did prejudice the jury.

"Why did the prosecutor repeatedly endeavor to get into evidence certain letters which the witness Tracy Ogden claimed she found in a dresser of the room occupied by respondent long after he had left her place? There was no showing that these letters belonged to respondent, were written by him, received by him, or had ever been seen by him. This was done for the sole purpose of forcing respondent's counsel to repeatedly object to them and convey to the jury the impression that these letters were dangerous and must be kept out of the case at all hazards."

Mrs. Emmons was instructed and cautioned as to her privilege to decline to answer the questions. When she claimed the privilege her claim was sustained but most of the time she seemed willing to testify and denied most emphatically much of the incriminating testimony of the people's witnesses. The prosecuting attorney should not have offered the letters or papers referred to in evidence until they had been properly identified. The court sustained counsel's objection to their introduction. While the record shows great zeal on the part of the prosecuting attorney we cannot say his conduct amounted to reversible error.

For the reason stated the case must be reversed and a new trial ordered.

BIRD, C. J., and STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred with MOORE, J.

STONE, J. (*dissenting*). We are unable to agree

with the conclusion reached by Justice MOORE in this case. From the record it appears that the admissions, or incriminating statements received in evidence, were made in the divorce case, after the respondent had been, by the court, sufficiently informed of his right to claim his constitutional privilege, and were, we think, voluntary. The fact that they were made under oath, and in another case, is no ground for their rejection. They were competent as substantive evidence, and their weight was for the jury. Underhill on Criminal Evidence (2d Ed.), p. 254, § 131; 12 Cyc. p. 474.

The following relevant cases are, among others, found in our own reports: *People* v. *Gould,* 70 Mich. 240; *People* v. *Prague,* 72 Mich. 178.; *People* v. *Gallagher,* 75 Mich. 512, 525; *People* v. *Lauder,* 82 Mich. 120; *People* v. *Taylor,* 93 Mich. 638, 641; *People* v. *Butler,* 111 Mich. 483; *People* v. *Henwood,* 123 Mich. 317; *People* v. *Rich,* 133 Mich. 14, 17; *People* v. *Robinson,* 135 Mich. 511; *People* v. *Hoffmann,* 142 Mich. 531, 571; *People* v. *Owen,* 154 Mich. 571 (21 L. R. A. [N. S.] 520).

In *People* v. *Gallagher, supra,* the testimony of the respondent on the trial of another person, was admitted as substantive evidence against the respondent upon his trial, and its admission was held to be proper.

In *People* v. *Lauder, supra,* the majority of the court held that:

"In all cases where a personal privilege exists for a witness to testify or not, if such witness does testify without objection, he will be deemed to have done so voluntarily."

In our opinion the court did not err in admitting in evidence the testimony of the respondent in the divorce case, and the conviction should be affirmed.

OSTRANDER, J., concurred with STONE, J.