PEOPLE *v*. RICH.

1. CRIMINAL LAW—RAPE—EVIDENCE—COMPLAINTS OF PROSECUTRIX.

In a prosecution for carnally knowing a girl 12 years old, evidence of complaints made by her almost immediately after the alleged offense is admissible.

2. SAME—HARMLESS ERROR.

Where respondent in a prosecution for rape admitted that there was blood on the snow at the place where the offense was alleged to have been committed, undertaking to explain its presence, the admission of other testimony to the same effect, objected to on the ground that witness was not shown to be an expert, was not prejudicial.

3. SAME—CROSS-EXAMINATION.

Where, in a prosecution for rape, respondent's mother, as a witness in his behalf, testified that, after the occurrence, she went with P. to see prosecutrix's mother, evidence as

to what she said to P. while so accompanying him was proper cross-examination.

4. SAME—HARMLESS ERROR.

The exclusion of respondent's testimony that S. had no authority to settle the case for him was not prejudicial, where he had testified that he never authorized anybody to settle the matter, and had written S. not to settle.

5. SAME—ADMISSIONS—DURESS.

The fact that admissions by a respondent charged with rape were made in the presence of prosecutrix's father, who was excited, and made threats against respondent, does not necessarily require the exclusion of the admissions as made under duress.

6. SAME—INSTRUCTIONS.

An instruction that a person's admission of guilt is strong evidence against him, unless he was under such restraint that it could not be said to have been made voluntarily, and that it was for the jury to determine the purpose and motive of any admission of respondent, and whether it was true, taking into consideration his testimony as well as that of the other witnesses, sufficiently guarded respondent's rights.

7. SAME—CONSPIRACY.

An instruction that respondent claimed that the prosecution was the result of a conspiracy,—"that is, there was no truth whatever in the charge,"—and that the evidence on that subject should be considered with the other evidence, but that respondent was not required to adopt any particular theory, being entitled to rest upon his plea of not guilty until the prosecution should convince the jury of his guilt, constituted a sufficient charge on such issue.

8. SAME—CREDIBILITY OF WITNESSES.

An instruction that the rules governing evidence generally applied to the respondent as a witness in his own behalf, and that the jury were at liberty to give his evidence such weight as it was entitled to in view of all the facts in the case, taking into consideration his interest in the outcome, was not misleading.

9. SAME—REASONABLE DOUBT.

Where, in a prosecution for rape, the testimony of the complaining witness to the main fact was direct, the circumstantial evidence being corroborative merely, an instruction that it was not necessary that every fact and circumstance and every link in the chain be proved beyond a reasonable

doubt, but that all the evidence in the case, when considered as a whole, must satisfy the jury beyond a reasonable doubt that respondent was guilty, was not erroneous.

Error to Newaygo; Palmer, J. Submitted November 21, 1902. ( Docket No. 223.) Decided April 21, 1903.

Arthur L. Rich was convicted of an assault with intent to commit the crime of rape, and sentenced to imprisonment in the State house of correction and reformatory at Ionia for two years and six months. Affirmed.

*Samuel D. Clay (Grove & McDonald and David E. Burns, of counsel ), for appellant.*

*George Luton,* Prosecuting Attorney, for the people.

MONTGOMERY, J. The respondent was charged with the offense of statutory rape, committed on the person of a female child 12 years of age. He was convicted of an assault with an intent to commit rape, and the case is before us for review on error.

The assignments of error are numerous, but have been very properly grouped. The first four are errors assigned upon the admission of testimony of statements made by the young girl who is claimed to have suffered the assault. It is unnecessary to set out at length the objections or testimony. We are all agreed that the testimony was clearly admissible within the previous rulings of this court. They consisted of complaints made by the child almost immediately after the offense, and the court, so far as we can discover, was careful in keeping the testimony within the limits prescribed by the rule.

Complaint is made of the ruling admitting the testimony of one George Evans that, at the scene of the alleged offense, he found snow which had a red color, produced by blood. It is said that he was not shown to be an expert; but, whether this was necessary or not, the respondent's own version of what occurred at this place showed that there was bloody snow, which he accounted for by

stating that he injured his hand, that it bled freely, and that he gathered up the snow in his hand, and threw it down in a bloody condition.

Error is assigned upon the ruling admitting the question to the witness Anna S. Rich, mother of respondent, as to all the conversation she had with a Mr. Pollard, when she testified that she went with Mr. Pollard to see Mrs. Evans, the mother of the injured girl, thinking, as she testified, that she could go down and quiet Mrs. Evans. The witness was called to the stand by the respondent, and testified to the conversation at the Evans house, and that she went there with Mr. Pollard. The cross-examination as to what she said to Mr. Pollard was, therefore, clearly competent as bearing upon her direct examination.

Objection is made to the exclusion by the court of the question put to the respondent as to what he said to Frank Seaman, his brother-in-law, at the time when he went to his house at 1 o'clock in the morning after the offense was alleged to have been committed, and directly before he left the State. It is said that, had he been permitted to testify, he would have testified that Mr. Seaman had no authority to settle the case for him. While this question might have been properly allowed, it is very manifest that no injury was done to respondent, for he had testified that he never authorized anybody to settle the matter for him, and that he wrote Mr. Seaman not to settle.

Error is assigned upon the admission of the testimony of Pollard and Sharp as to admissions made by respondent, on the ground that the admissions were not voluntary, but were made under duress and restraint. We think the circumstances are not such as to exclude this testimony as matter of law. Much of the talk was had in the presence of Mr. Evans, the father of the injured girl, who was very naturally excited, and is shown to have made threats against respondent; but that there was such restraint of the respondent as to exclude the testimony of his statements made at this time we do not find. The court charged the jury upon that subject as follows:

"If a person accused of a crime voluntarily admits the accusation, that is very strong evidence of his guilt, because it would be unnatural for a person accused of crime to voluntarily admit the accusation against himself, knowing that it would be used against himself, unless he committed the crime; and *the only exception to that rule would be where a person is so coerced, or under such duress or restraint, as that he would make a confession or admission involuntarily, and not of his own free will.* The court has permitted the evidence in this case to come to the jury, that the jury might take it, and analyze it and weigh it, to see what is the truth of the matter; and, if the confession or admission was made, for what purpose, with what motive, and if it was true. You have a right to take into consideration the testimony of the respondent in this case on that branch of the case, as upon all other branches of the case."

We think this sufficiently guarded the respondent's interests in that regard.

The respondent puts forth the claim that there was a conspiracy to charge him with this offense for the purpose of getting money. It is very doubtful whether the testimony was of a character to justify the submission of the testimony under discussion to the jury. The circuit judge, however, did charge the jury upon that subject as follows:

"It is also claimed by the defense that this whole matter concerning the charge against this respondent is a conspiracy, or the outgrowth of a conspiracy; that it is a trumped-up charge,—in other words, made out of whole cloth, as we say in common parlance,—and that there is no truth in it whatever. Now, that evidence goes into the case to be considered with the other evidence in the case, not necessarily as affirmative proof, because, as I said, when all the evidence in the case is before the jury, the burden of proof remains where it started, with the prosecution. But this is the respondent's claim. You can measure it, you can weigh it, you can sift it, and see what there is to it; that is what you may do. The defense does not have to have a theory, except as they see fit to adopt a theory. The defense is, 'not guilty;' that is the plea; and, as I told you, they rest upon that plea until the prosecution shall convince the jury of the guilt of the respondent. They may meet that proof in whatever way they see

fit.   That is what I mean by saying that the defense rely upon a conspiracy.   They may meet it by such claim as they see fit to put forth in the case."

This charge went as far as the evidence in the case warranted.

Error is assigned upon the refusal of the court to give a request upon the subject of the weight to be given to the respondent's testimony.   The court did charge the jury that the rules governing evidence generally applied to him, and that the jury were at liberty to give it such weight as it was entitled to in view of all the facts and circumstances in the case, and referred to the question of the interest which a witness might have as bearing upon his credibility. We think the jury could not have been misled by these instructions.

The only remaining question which we need to discuss arises over the instruction of the court, which, after very clearly defining "reasonable doubt," proceeded as follows:

"And when I say that the case must be proven as laid beyond a reasonable doubt before you could convict, I do not mean that *every fact* and *every circumstance* and *every link* in the chain must be proven beyond a reasonable doubt; I don't mean that; that would be unreasonable.   I mean that the entire evidence in the case, when connected together as a whole, convinces you that it is a safe basis upon which to rest a verdict of guilty, and that you are satisfied beyond a reasonable doubt, acting upon all the evidence in the case, that this respondent is guilty of one or another of the offenses which the court has defined."

In order that this instruction may be understood, we quote the instruction upon reasonable doubt, which was as follows:

"Now, the court will define to you what is meant by a reasonable doubt.   It is a doubt that grows out of the evidence in the case, if it exists at all.   It cannot originate anywhere else.   It is not an imaginary doubt, not a speculative doubt, not a doubt based upon a fancy.   It is a doubt based upon reason; such a doubt as you can give a reason for.   And as you investigate this case along the

lines of evidence (and nowhere else) you are to say whether you find that kind of doubt in the proof which causes you to hesitate and halt in your deliberations. The court does not say to you in these instructions that if you hesitate in your deliberations until by discussion you harmonize these differences, that each place where you hesitate is a reasonable doubt; but if you reach a point beyond which you cannot go conscientiously, and say that this respondent is guilty, then your deliberations come to a halt. It is such an obstruction as you cannot, as conscientious men, get by. The train of facts and circumstances in the case moves along, and, though there be obstructions here and there on the track, if they can be removed by fair, dispassionate discussion, and you reach the end of the journey, and then become satisfied in your minds that this respondent is guilty, then you have removed these obstructions, and they are not reasonable doubts, or any one of them. But if, as I say, the train of circumstances stops, and you are unable, after fair, calm, unprejudiced discussion, to get by that stopping place, then there is such a reasonable doubt, growing out of the evidence in the case, that you cannot get over or get by, and you should say then that the respondent should have the benefit of that reasonable doubt, and be acquitted by your verdict."

The respondent's counsel contend that the instruction first above quoted is in conflict with the holding of this court in *People* v. *Aikin*, 66 Mich. 481 (33 N. W. 821, 11 Am. St. Rep. 512). It is true that in that case an instruction that the jury need not be satisfied beyond a reasonable doubt of each link in the chain of circumstances relied upon to establish the respondent's guilt was held erroneous. That was a case, however, depending upon circumstantial evidence, and very clearly the rule as given by the circuit court in that case was error. But in the same case the case of *Marion* v. *State*, 16 Neb. 359 (20 N. W. 294), was cited, in which the following inquiry and reasoning appears, which is very pertinent to the present case:

"What is meant by the word 'link,' as used therein? If the jury were given to understand that it referred only to evidentiary facts which might add force or weight to other facts from which the inference of guilt could be drawn, then the instruction might be said to be correct."

We think this is precisely what the jury would have understood from the charge in this case. It was not a case depending upon circumstantial evidence. The testimony of the complaining witness to the main fact was direct, and the case depended upon her statement and that of the respondent. All the other testimony in the case was corroborative. If the testimony of the complaining witness was accepted as true, the offense, at least to the extent of an assault with intent to commit rape, was fully established. The other circumstances or "links" were, in their nature, corroborative, and the jury could not have understood the instruction in any other way.

We think no error was committed to the prejudice of the respondent, and that the conviction should be affirmed.

The other Justices concurred.