PEOPLE v ANITA HARRIS

PEOPLE v JOSEPH HARRIS

OPINION OF THE COURT

1. WITNESSES—CRIMINAL LAW—CONFESSIONS—COERCED CONFESSIONS
      —IMPEACHMENT.

   A coerced confession can never be used for impeachment pur-
   poses.

2. WITNESSES—CRIMINAL LAW—COERCED CONFESSIONS—CREDIBILITY
      OF WITNESSES.

   It is error to allow the use of a coerced confession for the limited
   purpose of testing the credibility of a witness.

3. WITNESSES—CRIMINAL LAW—COERCED CONFESSIONS—HARMLESS
      ERROR—WALKER HEARINGS—APPEAL AND ERROR.

   Error in the admission of a coerced confession for impeachment
   purposes is rendered harmless in a bench trial: (1) where the
   trial judge is the same judge who conducted the *Walker* hear-
   ing and ruled the confession inadmissible, and (2) where the
   defense chose to have the trial court conduct the trial even
   though the trial court had complete knowledge of all aspects of
   the coerced confession, and (3) where the judge stated that he
   would not consider the confession as substantive proof of the
   defendant's guilt, and (4) where the transcript clearly shows
   that there was sufficient evidence to convict the defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1–3, 10] 21 Am Jur 2d, Criminal Law § 222.
   29 Am Jur 2d, Evidence §§ 529, 531, 537, 542–554, 582.
[4] 29 Am Jur 2d, Evidence §§ 1, 249, 251–257, 267.
[5, 6, 9, 11] 29 Am Jur 2d, Evidence §§ 529, 531, 537, 542–554, 582.
[7] 5 Am Jur 2d, Appeal and Error §§ 776–819.
[8] 5 Am Jur 2d, Appeal and Error § 737.
[9] 30 Am Jur 2d, Evidence § 612.
[12] 5 Am Jur 2d, Appeal and Error § 614.
[13] 29 Am Jur 2d, Evidence §§ 415, 531.
[14] 40 Am Jur 2d, Homicide § 425 *et seq.*
[15, 16] 40 Am Jur 2d, Homicide § 15.

DISSENT BY R. M. MAHER, J.

4. CRIMINAL LAW—EVIDENCE—INADMISSIBLE EVIDENCE—MIRANDA GUIDELINES—IMPEACHMENT OF DEFENDANT—STANDARDS OF TRUSTWORTHINESS.

*Statements held inadmissible under the* Miranda *guidelines may be used to impeach a defendant where the trustworthiness of the evidence satisfies legal standards; legal standards of trustworthiness are not satisfied where the trial court finds such evidence patently liable to untrustworthiness.*

5. CRIMINAL LAW—EVIDENCE—IMPEACHMENT—INVOLUNTARY CONFESSIONS.

*Impeachment by an involuntary confession is improper.*

6. CRIMINAL LAW—EVIDENCE—INVOLUNTARY CONFESSIONS—IMPEACHMENT.

*An involuntary confession is just as untrustworthy when used for impeachment purposes as when used to prove guilt.*

7. APPEAL AND ERROR—HARMLESS ERROR.

*The Court of Appeals cannot hold an error harmless unless it first determines that the error is not so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless.*

8. CRIMINAL LAW—EVIDENCE—IMPROPER EVIDENCE—PROSECUTORS—HARMLESS ERROR.

*The deliberate interjection of improper evidence by a prosecutor precludes a holding that such an error is harmless.*

9. CRIMINAL LAW—EVIDENCE—INVOLUNTARY STATEMENTS—EXCLUSIONS.

*The deterrence of unlawful police conduct and our system's respect for individual dignity are interests to be considered in determining whether the exclusion of involuntary statements of defendants is required; trustworthiness of the statements is not the only interest that should be considered.*

10. CRIMINAL LAW—EVIDENCE—COERCED STATEMENTS—POLICE INVOLVEMENT.

*The admission of coerced statements, even when the police have not been involved in the coercion, diminishes the respect an individual should be accorded by our judicial system; gross coercion in order to extract a statement is repugnant in any instance.*

11. Criminal Law—Evidence—Appeal and Error—Codefendants—
Impeachment of Witnesses—Joint Trials.

> *Reversal of the convictions of both codefendants is required where statements referring to one of the codefendants were improperly admitted to impeach the testimony of the other at their joint trial.*

12. Appeal and Error—Criminal Law—Disqualification of
Judges—Walker Hearings—Court Rules.

> *Objection to trial by the same judge who conducted the Walker hearing to determine the admissibility of a confession at the trial should be raised in the trial court by a motion to disqualify, and such objection should not be raised for the first time on appeal (GCR 1963, 405.3).*

13. Criminal Law—Evidence—Exclusion—Fruit of Poisonous
Tree Doctrine—Police Misconduct.

> *The "fruit of the poisonous tree" doctrine extends the exclusionary rule to evidence obtained from exploitation of an initial government illegality, and such doctrine does not apply where police misconduct has not occurred.*

14. Homicide—Second-Degree Murder—Evidence—Sufficiency of
Evidence—Statutes.

> *There is sufficient evidence presented to support a verdict of second-degree murder where the record supports the court's finding that both of the defendants participated in vicious torturing of their victim and where there was evidence that that torturing and the injuries therefrom contributed to the death of the victim.*

15. Homicide—Liability—Contributory Causes.

> *Liability for homicide does not depend upon the fact that death is the immediate consequence of the injury inflicted by the accused; one is guilty of homicide if the injury he inflicts contributes, mediately or immediately, to the death of another.*

16. Homicide—Liability—Contributory Causes.

> *The responsibility for a homicide rests on both actors if at the moment of death the injuries caused by both actors are contributing thereto; the law does not measure the effects of the several injuries in order to determine which is more serious, and which contributes in the greater measure to bring about the death.*

Appeal from Oakland, John N. O'Brien, J. Sub-

mitted March 3, 1976, at Lansing. (Docket Nos. 23948, 23949.) Decided September 7, 1976.

Anita Harris and Joseph Harris were convicted of second-degree murder. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*John D. Lazar,* for defendants.

Before: D. F. WALSH, P. J., and J. H. GILLIS and R. M. MAHER, JJ.

J. H. GILLIS, J. Defendants Joseph Harris and Anita Harris, husband and wife, were tried without a jury on a charge of first-degree murder, MCLA 750.316; MSA 28.548. Both were convicted of second-degree murder, MCLA 750.317; MSA 28.549. The court sentenced each to 7-1/2 to 20 years imprisonment. Defendants appeal.

On January 4, 1974, the partially clothed body of a young woman was found in the snow outside a Pontiac grocery store. Clothesline was around her neck, hands and feet. Burns, bruises and cuts on various parts of the body indicated vicious torture. An autopsy revealed strangulation by ligature and substantial internal hemorrhaging.

A "citizens' group" composed of the victim's brother and some friends conducted a private investigation. They obtained statements by physical coercion and threats against the defendants, Joseph Harris and Anita Harris. Additionally, two other suspects, Willie Scott and Rosemary Tipton,

were coerced by the citizens group into making statements. Mrs. Harris, who carried her baby with her, was not struck but was forced to confess at gunpoint along with the others.

This citizens' group then entrusted the suspects to the custody of the Pontiac police. After the citizens' group departed from the police station, the suspects were read their *Miranda* rights and all gave statements concerning the incident to the police. On the basis of the statements given to the police, the district court issued arrest warrants for Joseph and Anita Harris and Rosemary Tipton. A search warrant for the premises where the murder was alleged to have taken place was also issued at this time.

From May 1, 1974 to May 15, 1974 the circuit judge, who later served as the trial judge, conducted a *Walker* hearing, which resulted in the suppression of all statements made to the citizens' group. The circuit judge declined to suppress the statements made to the police after determining that the *Miranda* warnings had been given to each of the suspects.

At trial defendant Joseph Harris testified, and the prosecutor attempted to use the statements made by Joseph Harris to the citizens' group for impeachment purposes. The prosecution, in attempting to introduce portions of the coerced confession, relied expressly on the exception of *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971). The court allowed this coerced confession in for the limited purpose of testing the credibility of the witness. This was clearly erroneous in that a coerced confession can never be used for impeachment purposes. Inasmuch as Joseph and Anita Harris were jointly tried in a nonjury trial and are here on a consolidated appeal, it is important

to note at this juncture that the coerced confession was not used against Anita Harris. It is also important to note at this juncture that defense lawyers were well aware of the fact that the same judge who conducted the *Walker* hearing and ruled the confessions inadmissible, because they were coerced, conducted this nonjury trial. Counsel had every opportunity to request that the trial be conducted by a different judge, and in fact the record clearly denotes that the prosecutor pointed out this dilemma in the presence of defense counsel prior to trial.

We can only conclude that the defendants and their counsel chose to have the trial court conduct the trial even though the trial court had complete knowledge of all aspects of the coerced confession.

In light of the aforementioned facts, we do not believe that there was reversible error committed here. The error was harmless inasmuch as the trial court was not prejudiced by the admission of this attempt to improperly impeach defendant Joseph Harris. It, of course, did not affect Anita Harris' trial since no attempt was made to impeach her testimony.

The trial judge is an able experienced jurist who stated on the record in a rather lengthy dissertation that he would not consider the statement made to the citizens' group as substantive proof of the defendants' guilt. A reading of the 478-page transcript clearly shows that there was sufficient evidence to convict each of the defendants of second-degree murder. Another fact finder might well have found each of the defendants guilty of first-degree murder. There is ample evidence in the record to support a finding that the killing was premeditated and such premeditation extended over a matter of hours.

The trial court, after hearing all of the evidence, reduced the original charge of first-degree murder to second-degree murder, which is some evidence of the fact that he was not prejudiced by the utilization of this coerced confession in the trial of Joseph Harris.

There were other issues presented on appeal, which we have considered. We find no reversible error in each of these other issues.

For the reasons hereinbefore stated we affirm each of the convictions.

D. F. WALSH, P. J., concurred.

R. M. MAHER, J. *(dissenting).* I cannot join in the affirmance of defendants' convictions.

On January 4, 1974, the partially clothed body of a young woman was found in the snow outside a Pontiac grocery store. Clothesline was around her neck, hands and feet. Burns, bruises and cuts on various parts of the body indicated vicious torture. An autopsy revealed strangulation by ligature and substantial internal hemorrhaging.

A few days after the victim's body was found, her brother led a group of young men in "investigating" her death. They were brutal with their four suspects, defendants Joseph and Anita Harris, Rosemary Tipton, who was charged with defendants but pled to a lesser charge, and Willie Scott. Defendant Joseph Harris was pistol-whipped and scalded with hot bleach in front of the others, and Rosemary Tipton was seriously beaten. All four then gave statements at gunpoint to the vigilante group. After taping the statements, the vigilante group took the four to the Pontiac police.

Defendant Joseph Harris and Rosemary Tipton required medical treatment. The four were given their *Miranda* warnings and interviewed. All gave statements to the police. Defendant Anita Harris' statement was used to obtain a warrant to search Rosemary Tipton's apartment, where evidence introduced at defendants' trial was seized.

At a *Walker* hearing, the statements extracted by the vigilante group were ruled inadmissible. Nevertheless, the taped statement that defendant Joseph Harris gave as the result of torture and at gunpoint was used to impeach his testimony at trial. Both defendants urge that admission of this statement, and other alleged errors, require reversal of their convictions.

The prosecution, invoking *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), persuaded the court to admit for impeachment purposes the previously suppressed statement of defendant Joseph Harris. In *Harris,* the Supreme Court held that statements inadmissible under *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), can be used to impeach a defendant, "provided of course that the trustworthiness of the evidence satisfies legal standards". 401 US at 224. *Harris* provides no basis for the admission of defendant's statement, which had been suppressed because the trial court here, considering the situation under which the statements were made, found them "patently liable to untrustworthiness".

*People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), held that impeachment by an involuntary confession is improper. The Court quoted from

*State v Smith,* 242 Or 223, 226; 408 P2d 942, 944
(1965), where the Oregon Supreme Court stated:

"An involuntary confession is just as untrustworthy
when used for impeachment purposes as when used to
prove guilt. Such a confession is of no greater credibil-
ity when used to prove defendant a liar than when it is
used to prove him guilty."

In *Reed,* defendant's confession was involuntary
because it was made in response to promises from
police officers. Defendant Joseph Harris' statement
was made at gunpoint, after the group had beat
him and poured hot bleach on him. Even more so
than in *Reed,* the potential for fabrication, for
defendant telling his tormentors what they wanted
to hear, was present.

The only serious argument that the prosecution
makes against reversal on this issue is that admis-
sion of the statement was harmless error. The
prosecution points out that it is unlikely that the
trial court, which had earlier ruled the statement
inadmissible because it was untrustworthy, was
influenced by it in determining guilt. While I
agree with this contention, before this Court can
hold an error harmless it must first determine
that the error is not "so offensive to the mainte-
nance of a sound judicial process that it never can
be regarded as harmless". *People v Robinson,* 386
Mich 551, 563; 194 NW2d 709 (1972). Application
of this admittedly imprecise standard is not easy,
and in the context of this case it is truly troubling.

Deliberate interjection of improper evidence by
the prosecutor precludes holding that an error is
harmless. *People v Robinson, supra.* While the
prosecution misstated the thrust of *Harris* in per-
suading the court to admit defendant Joseph Har-
ris' statement, I am unable to state, from review-

ing the record, that this misstatement was deliberate. Even this Court has incorrectly read *Harris.* See *People v Reed, supra,* reversing 49 Mich App 308; 212 NW2d 41 (1973).

More difficult to assess, in terms of the standard this Court must apply to determine whether an error is harmless, is the admission of the statement by the trial court which was well aware of the brutality used to extract it. More than mistrust of the evidentiary value of coerced statements has caused their rejection; trustworthiness is only one interest among several that requires exclusion of involuntary statements. *Blackburn v Alabama,* 361 US 199; 80 S Ct 274; 4 L Ed 2d 242 (1960). Most recent decisions emphasize the interest in deterring unlawful police conduct; the facts of this case do not require consideration of this interest. Also underlying the judicial rejection of coerced statements as evidence is a difficult to articulate notion of individual dignity; to use a confession that is not the "product of a free and unconstrained will", *Haynes v Washington,* 373 US 503, 514; 83 S Ct 1336, 1343; 10 L Ed 2d 513, 521 (1963), not "freely self-determined", *Rogers v Richmond,* 365 US 534, 544; 81 S Ct 735, 741; 5 L Ed 2d 760, 768 (1961), is inconsistent with the worth our legal system attributes to the individual. The separation of this notion from the control of police misconduct is not often made, undoubtedly due to use of public, not private, law enforcement in this country and also to the fact that respect for the individual is one reason why courts have been so concerned with overseeing police practices. *E.g. Miranda v Arizona,* 384 US 436, 460; 86 S Ct 1602, 1620; 16 L Ed 2d 694, 715 (1966). Gross coercion in order to extract a statement is in any instance repugnant. The *admission*

of coerced statements, even when the police have not been involved in the coercion, diminishes the respect an individual should be accorded by the judicial system. I cannot find the admission of defendant Joseph Harris' statement to be harmless error in his conviction.

The statement refers to codefendant Anita Harris, and was used to impeach Joseph Harris' testimony about Anita. The error in admitting the statement in their joint trial requires the reversal of her conviction as well as Joseph Harris' conviction.

While I agree with the majority that defendants' other issues do not involve reversible error, I believe they deserve at least brief discussion. Defendants were well aware of the trial court's familiarity with preliminary examination testimony, since portions of the preliminary examination transcript were incorporated in the *Walker* hearing record by stipulation. Any objection they had to a bench trial before the judge should have been raised by a motion to disqualify. GCR 1963, 405.3. Only if *People v Ramsey,* 385 Mich 221; 187 NW2d 887 (1971), vitiates any conviction in which a judge sitting as trier of fact is familiar with the preliminary examination transcript can defendants prevail on this issue. They can point to no prejudice. *People v Walter,* 41 Mich App 109; 199 NW2d 651 (1972), and *People v Garcia,* 51 Mich App 109; 214 NW2d 544 (1974), indicate that there are exceptions to *Ramsey* applicable to this case.

It is also my opinion that any objection to trial by the judge who conducted the *Walker* hearing should not be first raised on appeal. Failure to move to disqualify in this case waives whatever claim of error defendants might have.

Defendants objected below to the use of state-

ments given the police after the vigilante group brought the four suspects to the police station. *Miranda* warnings preceded the statements, and the court found them voluntary. Nevertheless, defendants contend that the use of these statements, which were used to obtain arrest warrants and a search warrant, and were introduced at trial, was prohibited by the "fruit of the poisonous tree" doctrine. *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963). There was no poisonous tree, as the term has been employed by the courts, to bear fruit. The doctrine extends the exclusionary rule to evidence obtained from exploitation of an initial government illegality. The doctrine, designed to prevent the government from benefiting even indirectly from its illegal conduct, is inapplicable where no police misconduct has occurred.

Defendants claim the evidence presented was insufficient to support the verdict. I disagree. The record supports the court's finding that both defendants participated in vicious torturing of the victim. Though the medical examiner gave the cause of death as strangulation by ligature, he also testified that the other injuries contributed to her death.

"Liability for homicide does not depend upon the fact that death is the immediate consequence of the injury inflicted by the accused. One who inflicts an injury on another is deemed by the law to be guilty of homicide if the injury contributes mediately or immediately to the death of such other. * * * If, at the moment of death, it can be said that both injuries are contributing thereto, the responsibility rests on both actors. In such cases, the law does not measure the effects of the several injuries in order to determine which is the more serious, and which contributes in the greater measure to

bring about the death." 40 Am Jur 2d, Homicide, § 15, pp 306–307. (Footnotes omitted.)

Defendants' last issue is answered by *People v Stewart,* 61 Mich App 167; 232 NW2d 347 (1975).

I would reverse defendants' convictions and remand their causes for a new trial.