PEOPLE v SWITZER

Docket No. 69316. Submitted December 6, 1983, at Lansing.—Decided
    June 28, 1984.

   Marvin J. Switzer was convicted following a bench trial in the
      Ingham Circuit Court of involuntary manslaughter but men-
      tally ill. Defendant appeals alleging that the trial court, Robert
      Holmes Bell, J., erred in admitting into evidence involuntary
      statements made by the defendant to an individual who was
      not a police officer as a result of coercion by that private
      citizen. *Held:*

      1. It makes no difference whether an involuntary statement
   is coerced by a police officer or a private citizen. It may not be
   used either as direct evidence or for impeachment purposes.

      2. The harmless error doctrine may not be applied where a
   coerced confession was admitted in evidence against a criminal
   defendant.

      3. The evidence in the record was insufficient, without the
   coerced confession, to establish beyond a reasonable doubt that
   the defendant was responsible for the death.

      4. The people's argument that the defendant's subsequent
   statements and confessions to police officials were admissible
   evidence was not properly before the Court of Appeals. Having
   failed to bring a cross-appeal, the people must obtain leave of
   the Court of Appeals in order to secure appellate review of the
   claim.

      5. There was sufficient evidence before the trial judge to
   support the finding of involuntary manslaughter. The medical
   testimony concerning the cause of death, coupled with circum-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 529, 542 *et seq.,* 582.
    81 Am Jur 2d, Witnesses, §§ 527, 602.
    Admissibility of pretrial confession in criminal case—Supreme
        Court cases. 16 L Ed 2d 1294.
    Impeachment of accused as witness by use of involuntary or not
        properly qualified confession. 89 ALR2d 478.
[2] 21A Am Jur 2d, Criminal Law § 647.
[3] 29 Am Jur 2d, Evidence § 590.
[4] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

stantial evidence and the defendant's admissions, was sufficient to convince the trial judge beyond a reasonable doubt that the defendant was guilty of involuntary manslaughter.

Reversed and remanded for a new trial.

1. CRIMINAL LAW — EVIDENCE — CONFESSIONS.

A confession made involuntarily to the police may never be used against a criminal defendant as direct evidence or for impeachment purposes.

2. CRIMINAL LAW — EVIDENCE — CONFESSIONS — POLICE COERCION — COERCION BY PRIVATE CITIZEN.

A confession found to be coerced and involuntarily made is not admissible in evidence in a criminal trial, even if the state is not involved in the coercion; it makes no difference whether the involuntary statement was coerced by a police officer or a private citizen.

3. APPEAL — HARMLESS ERROR — EVIDENCE — COERCED CONFESSIONS.

The harmless error doctrine may not be applied where a coerced confession was admitted in evidence against a criminal defendant.

4. APPEAL — PRESERVING QUESTION — CROSS-APPEALS.

The people must obtain leave from the Court of Appeals in order to secure appellate review of a claim regarding a trial court's ruling on the admissibility of evidence where the people failed to bring a cross-appeal in order to bring the issue before the Court of Appeals on the defendant's appeal.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, *Janis L. Blough,* Chief Appellate Attorney, and *Angela Baryames,* Assistant Prosecuting Attorney, for the people.

*Philip C. Dean,* for defendant on appeal.

Before: M. J. KELLY, P.J. and CYNAR and J. C. KINGSLEY,* JJ.

PER CURIAM. Defendant was charged with second-degree murder in the death of an eight-month-

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

old child named Buford Schrader. Following a
bench trial, he was found guilty of involuntary
manslaughter, MCL 750.321; MSA 28.553, but
mentally ill. Defendant has a history of special
education placement and a measured IQ of 65 with
a mental age of 10 or 11 years. He was sentenced
to from 5 to 15 years in prison and appeals as of
right.

The primary issue presented in this appeal—
whether a confession found to be coerced by, and
made involuntarily to, a private citizen is admissi-
ble in evidence in a criminal trial—appears to be a
matter of first impression in this state.[1] Defendant
claims that the trial judge erred by admitting into
evidence defendant's statements made to Thomas
Shellito, a cousin of the deceased husband of Bu-
ford's mother.

The record discloses that Buford and his mother
were living with the defendant at the time of the
child's death on July 1, 1982. She advised Shellito
on July 4, 1982, that she thought that the defen-
dant was responsible for the child's death. The
evidence disclosed that death resulted from inter-
nal bleeding caused by a severe blow to the chest
and abdomen area with an object of relatively
large shape and smooth texture. The examining
physician theorized the injury could have been
caused by a human fist.

Based on the mother's suspicion, Shellito en-
tered defendant's home the next day, locked the
door and demanded that defendant tell him what

[1] *People v Harris,* 71 Mich App 82, 246 NW2d 406 (1976), involved a
statement obtained from the defendants by physical coercion and
threats made by a "citizens' group". Defendant, Joseph Harris, testi-
fied at trial and the coerced confession was admitted into evidence
"for the limited purpose of testing the credibility of the witness". The
trial judge stated he would not consider the statement "as substantive
proof of the defendants' guilt". Defendant Switzer did not testify
during his trial.

happened to the child. When defendant denied knowing anything, Shellito said he "was going to knock the hell" out of defendant. He struck the defendant twice in the face with his fist. The scope and nature of the attack on the defendant was described by the trial judge in his findings, made at the conclusion of a hearing held to determine the admissibility of the statements made by the defendant to Shellito and to various police officials.[2]

Defendant finally admitted to Shellito that he hit the child, but could only remember "waking up, cradling the baby and crying and putting the baby in the crib". Shellito then called the Lansing Police Department and had the defendant repeat the statement to the officer responding to his call. In reviewing the evidence presented, the trial judge characterized the statement as having been coerced by Shellito.[3]

Even though the trial judge found the statements to have been coerced and made involuntarily by the defendant to Shellito, they were ruled admissible at trial "upon proper foundation, of course, of relevancy, but subject to criminal jury instruction 4.1.101 *[sic]* being given to the trier of

---

[2] "The defendant sat down on the couch and put his hands on his knees and said he wouldn't talk. At which point, a brutal, from the testimony of Mr. Shellito, attack upon this defendant took place. That this attack was a striking with hands and feet, on the shoulders, and the head, more than 20 times. At which point, the defendant then said, okay, I will tell you. I was downstairs and the baby upstairs. At which point, Mr. Shellito apparently again was very upset. Mr. Shellito indicates that he was very loud and boisterous, that he was arguing and slapping the defendant. He indicates that the defendant was afraid to say anything."

[3] "* * * a statement somewhat damaging has been said by the defendant to another individual. That this court finds that the statement to have been coersive *[sic]*, and this court finds it to have been threatening, and this court finds that the testimony is very clear that the statement would not have been made, had it not been for the physical attacks upon the defendant."

facts, concerning the limitation on the use with which these statements are made". The trial judge suppressed all statements made by the defendant to various police officials because "there was not the requisite voluntary intentional relinquishment of rights to remain silent".

A written waiver of a jury trial was executed in open court, and the prosecutor and defense counsel stipulated to the court's review, in lieu of testimony, of the preliminary examination testimony of Shellito and other witnesses. The prosecutor then made her opening statement and rested, having introduced all of her testimony and evidence through the stipulation. The defendant called only one witness, who testified regarding the defendant's mental condition. At the conclusion of the arguments, the trial judge found the defendant guilty as set forth above.

In ruling that the statements made to Shellito were admissible, the trial judge noted that "the appellate law has always concerned itself with the police or state action" when an issue concerning the voluntariness of a confession was raised. The trial judge relied on the case of *People v Omell,* 15 Mich App 154; 166 NW2d 279 (1968), in admitting the statements into evidence. That case is distinguishable because the issue decided was whether an individual who was not a police officer was required to give *Miranda* warnings to a defendant before taking a statement in the nature of a confession. The limited scope of that decision was emphasized and relied on in the case of *People v Leroy Morgan,* 24 Mich App 660; 180 NW2d 842 (1970). The issue of force and coercion by an individual who was not a police officer was not involved in those cases, and thus they have no controlling weight in the case at bar.

It is clear that confessions made involuntarily to the police may never be used against a criminal defendant, not only because the police broke the law, but more importantly because an involuntary confession is always of questionable trustworthiness. *People v Reed,* 393 Mich 342, 355; 224 NW2d 867 (1975). Because of its untrustworthy evidentiary value, an involuntary confession may not be used either as direct evidence or for impeachment purposes. *Reed, supra,* p 356.

We are persuaded that it should make no difference whether an involuntary statement is coerced by a police officer or a private citizen. This approach has been followed in a number of other jurisdictions. *State v Kelly,* 61 NJ 283; 294 A2d 41 (1972); *State v Hess,* 9 Ariz App 29; 449 P2d 46 (1969); *Schaumberg v State,* 83 Nev 372; 432 P2d 500 (1967); *People v Frank,* 52 Misc 2d 266; 275 NYS2d 570 (1966); *State v Ely,* 237 or 329; 390 P2d 348 (1964); *People v Berve,* 51 Cal 2d 286, 293; 332 P2d 97, 101 (1958).

The same conclusion may be drawn from our Supreme Court's decision in *People v Rich,* 133 Mich 14; 94 NW 375 (1903). In that case, the defendant made certain inculpatory statements after having been threatened by the father of a rape victim. At the time of the *Rich* trial, a jury was allowed to decide the issue of the voluntariness of an admission or confession. The Supreme Court approved an instruction to the jury that a coerced confession made under duress or restraint was an exception to the rule that an admission was strong evidence of guilt. Michigan has adopted a rule requiring the judge to decide questions of voluntariness outside the presence of the jury. *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965). We therefore conclude that a

confession found to be coerced and involuntarily made is not admissible in evidence in a criminal trial, even if the state is not involved in the coercion.

The prosecutor argues that any error in admitting defendant's coerced confession was harmless. The harmless error doctrine may not be applied, however, when a coerced confession was admitted in evidence against a criminal defendant. *Lynumn v Illinois,* 372 US 528, 537; 83 S Ct 917; 9 L Ed 2d 922 (1963). In addition to this fact, we note that the trial judge placed considerable emphasis on the confession in finding the defendant guilty but mentally ill.[4]

Without the confession to Shellito, the only evidence in the record to connect the defendant to the child was that he was present on several occasions when the child was crying. This evidence would be insufficient to establish beyond a reasonable doubt that the defendant was responsible for the death of the child.

The prosecutor also urges this Court to find that defendant's subsequent statements and confessions to police officials were admissible evidence. This issue is not properly before this Court on appeal. Having failed to bring a cross-appeal, the people must obtain leave of this Court in order to secure appellate review of the claim.

---

[4] "Now, it is significant to this court, in reviewing Mr. Shellito's testimony of the defendant's statement, in viewing the pathologist statement, of the nature of the injury, that they were consistent with one another. That is, that the pathologist's statements as to the causation of injuries is consistent with a, an adult male fist, hands, or arm violently coming down upon the small abdomen of an eight or nine month old child, sufficient to rupture the kidney and cause the laceration previously alluded to.

"Therefore, the court would have to find from the testimony in this matter that it does not have a reasonable doubt but then that this Buford Earl Schrader died on or about the 30th of June, of 1982, and that his death was caused by an act of the defendant."

Defendant also claims that there was insufficient evidence before the trial judge to support the finding of involuntary manslaughter. We disagree. Medical testimony concerning the cause of death, coupled with circumstantial evidence and the defendant's admissions, was sufficient to convince the trial judge beyond a reasonable doubt that the defendant was guilty of involuntary manslaughter. We choose not to comment on the nature and extent of the evidence that may be presented by the prosecutor at a new trial, except to note that the trial "by stipulation" may not have presented all of the relevant evidence to the trial judge.

Defendant's claim concerning his sentence has been rendered moot by our reversal of his conviction.

Reversed and remanded for a new trial.