PEOPLE v SEYMOUR

Docket No. 123826. Submitted September 11, 1990, at Grand Rapids. Decided April 15, 1991, at 9:45 A.M.

Patrick P. Seymour, pleaded guilty of armed robbery in the Grand Traverse Circuit Court, William R. Brown, J., after the court denied his motion to suppress evidence of a written confession made while in police custody. The defendant appealed, claiming that his confession was involuntary because he decided to give the statement after his girl friend told him while he was in jail that she would put their daughter up for adoption and that he did not knowingly, voluntarily, and understandingly waive his right to counsel before he confessed because he was confused by legal jargon used by the police.

The Court of Appeals *held:*

The trial court did not clearly err in finding that the defendant's confession was voluntary and that he waived his right to counsel before confessing.

1. The police officers in this case, who allowed the defendant's girl friend to visit him in jail, did nothing either directly or through the girl friend to instigate or coerce the defendant's confession.

2. The defendant was fully and repeatedly advised of the right to counsel, expressed his understanding of the right, and knowingly and understandingly waived the right for the purpose of the confession.

Affirmed.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Dennis LaBelle,* Prosecuting Attorney, and *Thomas S. Gilbert,* Assistant Prosecuting Attorney, for the people.

*Blakeslee, Chambers, Peterson, Dalrymple & Christopherson* (by *James A. Christopherson*), for the defendant on appeal.

Before: MacKenzie, P.J., and Holbrook, Jr., and Shepherd, JJ.

SHEPHERD, J. On August 3, 1989, defendant pleaded guilty to armed robbery, MCL 750.529; MSA 28.797, and was subsequently sentenced to five to ten years in prison. His plea was conditioned on his right to bring this appeal in which he contests the trial court's denial of his motion to suppress. We affirm.

Defendant's conviction stems from a February 16, 1989, incident in which defendant, wielding a large knife, allegedly robbed a pizza restaurant. He was arrested by the state police the following day on a different charge. At the time of arrest, he was advised of his Miranda[1] rights and waived them, but denied involvement in the robbery. After being taken to the police station, defendant invoked his right to an attorney, and all questioning ceased. While defendant was at the station, his girl friend and codefendant, Ruth Ziemkowski, arrived and talked to Detective, now Lieutenant, Goeman for over an hour, during which she related the financial difficulties the couple had been having, as well as her involvement in the robbery. She was not under arrest or in custody at the time, but did write a letter of apology to the victims. Though Ziemkowski stated that the police did not mistreat her in any way and did not threaten her or promise her anything, she got the impression that "things would happen a lot faster, a lot smoother" if she and defendant cooperated. Ziemkowski had also been advised that defendant had invoked his right to counsel.

At her insistence, Ziemkowski was then permitted to visit defendant. No officers were present during the meeting between defendant and Ziemkowski, except that Detective Goeman periodically checked on them to see if they needed anything.

---

[1] *Miranda v Arizona,* 383 US 436; 86 S Ct 1602; 16 L Ed 2d 644 (1966).

As a result of Ziemkowski's visit, defendant changed his mind and decided to give a statement without counsel present. According to defendant and Ziemkowski, defendant decided to give a statement after Ziemkowski told him she would put their two-year-old daughter up for adoption. Ziemkowski has maintained that this is what she truly intended to do because she believed the child needed both a mother and a father and she would not raise the child alone. She knew, however, that neither her statement nor defendant's would alter their financial difficulties or make defendant's arrest go away. At the time defendant wrote his "letter of apology," which began with the statement, "I hereby give up my right to an attorney at this time so that I might give this statement," he also relinquished to the police some of the stolen money and told them where he had hidden the knife and tennis shoes used during the robbery.

Defendant claims that the police used Ziemkowski to wear him down and extract the statement from him and that his statement therefore was coerced and not voluntary. Though he did not make the precise argument below, he further claims that, even if the police did not use Ziemkowski as their agent, her threat of putting their child up for adoption nonetheless rendered his statement involuntary. Lastly, defendant asserts that he did not knowingly and intelligently waive his right to counsel before giving the statement and informing the police regarding where they would find the physical evidence.

We first address the voluntariness issue. When reviewing a trial court's determination of voluntariness, we examine the entire record and make an independent determination. *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709 (1972); *People v Stricklin,* 162 Mich App 623, 635; 413 NW2d 457

(1987). Great deference is given, however, to the trial court's assessment of the credibility of the witnesses. *People v Marbury,* 151 Mich App 159, 161; 390 NW2d 659 (1986). The trial court's findings will not be reversed unless clearly erroneous. *People v Kvam,* 160 Mich App 189, 196; 408 NW2d 71 (1987).

In determining the voluntariness of a statement, the trial court should consider all the facts and circumstances, including the duration of detention and questioning, the defendant's age, intelligence, education and experience, his physical and mental state, and the diverse pressures which sap or sustain his powers of resistance and self-control. *Id.; People v Belknap,* 146 Mich App 239, 241; 379 NW2d 437 (1985). While allegations of coercive tactics are usually directed toward the police, this Court has held that a confession coerced by a private citizen can also render the statement involuntary and inadmissible in evidence. *People v Switzer,* 135 Mich App 779, 784; 355 NW2d 670 (1984).

Here, the trial court found, after conducting a *Walker*[2] hearing, that the state police officers handling defendant's case properly ceased questioning defendant when he invoked his right to counsel, allowed Ziemkowski to see him simply as a humanitarian gesture, did nothing to instigate the giving of the statement in question, and that defendant gave the statement of his own choosing and did so voluntarily. On the basis of the record before us, we cannot say these conclusions are clearly erroneous. There is no evidence that the officers involved used Ziemkowski, directly or indirectly, to "get at" defendant. Though she was not threatened or promised anything, Ziemkowski

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

somehow believed that writing letters of apology would make things easier for her and defendant. Ziemkowski acted on her own and without any suggestion on the part of the officers, and the trial court properly so found.

With respect to whether defendant's statement was nonetheless involuntary because it was made only after Ziemkowski threatened to give their child up for adoption, we acknowledge the *Switzer* decision, but find it factually distinguishable and not controlling here. In *Switzer,* the defendant confessed to a crime only after being threatened with his life and beaten by a relative of the victim. In the case at bar, however, while Ziemkowski appealed to defendant's emotions, we cannot say that she coerced him and that his statement was involuntary. When Ziemkowski told defendant she would put their child up for adoption, she fully intended to do so. Were we to find coercion and involuntariness under the circumstances, any time a family member or friend implores a prisoner to tell the truth, or a defendant claims this is what occurred, the resulting confession would perforce be deemed involuntary. We do not believe the *Switzer* panel intended its decision to have such far-reaching application or implications. Each case must be reviewed on its own facts, and we find, on the basis of the testimony given at the *Walker* hearing in this case, that defendant's statement was not coerced and was not involuntary and that the trial court properly denied defendant's motion.

We further agree with the trial court that defendant did knowingly, voluntarily, and understandingly waive his right to counsel for the purpose of giving the statement. See *Edwards v Arizona,* 451 US 477, 483-484; 101 S Ct 1880; 68 L Ed 2d 378 (1981); *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982), cert den 456 US 995 (1982).

Defendant claimed below, as he does on appeal, that he was confused with regard to his right to counsel because the officers used legal jargon in trying to explain it to him.

The trial court found defendant's testimony was not credible and that he did, in fact, understand that he was giving up his right to counsel at the time he gave the statement and knew that he had a right to have an attorney present. Our review of the record convinces us that the right to counsel was fully and repeatedly explained to defendant, that defendant expressed his understanding in his statement with his own words, and that he knowingly and intelligently waived his right to counsel for purposes of giving the statement.

Affirmed.