# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LORRAINE ANDREA TRIMBLE,

        Defendant-Appellant.

UNPUBLISHED
September 6, 2018

No. 336006
Macomb Circuit Court
LC No. 2016-000878-FC

Before: SWARTZLE, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right her jury conviction of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (victim under 13). We affirm.

Defendant's convictions are the result of her digital penetration of the complainant, her niece. The complainant was 24 years old at the time of trial. The crime occurred when the complainant was 7 to 10 years old, and defendant was in her early twenties.

Defendant first argues that the evidence was insufficient to convict her of CSC I. We disagree. This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).

Due process requires that evidence of every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Gonzalez*, 468 Mich 636, 640–41; 664 NW2d 159 (2003) (quotation marks and citation omitted). "The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78, 81 (2000) (quotation marks and citation omitted).

Defendant was convicted of CSC I under MCL 750.520b(1)(a), which provides:

-1-

(1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

(a) That other person is under 13 years of age.

MCL 750.520a(r) defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."

It is undisputed that, at the time of the alleged crime, the victim was under 13 years of age. The complainant recalled defendant rubbing the skin outside of her vagina and her similarly rubbing defendant. She testified that she could not recall anything entering her vagina and that her memory was fuzzy about the rubbing incidents. Thus, the testimony of the complainant did not establish beyond a reasonable doubt that defendant had penetrated her vagina. However, during an interview with Detective Keith Harvey, defendant admitted that she touched the complainant's vagina. Harvey drew a hand and asked defendant to circle the portion that went inside the complainant's vagina, and defendant responded by circling one of her fingertips. Defendant agreed that she only put her finger in "a little, tiny bit, and did not force it or hurt" the complainant. Both the drawing and the interview were presented to the jury. From this evidence, the jury could have found beyond a reasonable doubt that defendant committed CSC I under MCL 750.520b(1)(a).

Defendant argues that her reference to a vagina was a general reference to the pubic area and therefore does not establish that she committed CSC I under MCL 750.520b(1)(a). But defendant fails to recognize that MCL 750.520b(1)(a) does not require a defendant to penetrate a victim's vagina; it only requires evidence of penetration to a victim's "genital opening," which, for a female victim, includes external genital organs such as the labia majora. See *People v Whitfield*, 425 Mich 116, 135 n 20; 388 NW2d 206 (1986); *People v Bristol*, 115 Mich App 236, 238; 320 NW2d 229 (1982); *People v Harris*, 158 Mich App 463, 469; 404 NW2d 779 (1987). Moreover, Harvey testified that defendant made specific references to penetration of the victim's vagina, not the general pubic area. Although defendant argues that this testimony was unreliable because of a coercive police interview, her argument goes to the weight and credibility of this evidence. It is for the trier of fact, not the appellate court, to determine the weight and credibility of the evidence to decide the questions of fact. See *People v Wolfe*, 440 Mich 508, 514–15; 489 NW2d 748 (1992), amended October 9, 1992.

Defendant also ignores other circumstantial evidence that supported her conviction. The complainant reported that she would have to throw her underwear away after visiting defendant because of blood stains; defendant sent her ex-husband a text admitting that she did "do that to [the complainant]"; and defendant's sister-in-law said that defendant responded "yes" when asked whether the complainant's allegations were true. The jury considered the testimony of Harvey, defendant's recorded interview with Harvey and her circling of her fingertip, and the other supporting evidence, and it determined that defendant penetrated complainant's genital opening despite the complainant's lack of recollection. Viewing the evidence in a light most favorable to the prosecution, the jury could have found beyond a reasonable doubt that defendant committed CSC I.

Next, defendant argues that the trial court erred in denying her motion to suppress her incriminating statement to the police. This Court reviews de novo a trial court's ruling on a motion to suppress. *People v Steele*, 292 Mich App 308, 313; 806 NW2d 753 (2011). The trial court's factual findings are reviewed for clear error. *People v Elliott*, 494 Mich 292, 300-301; 833 NW2d 284 (2013). A finding is clearly erroneous if it leaves the Court with a firm and definite conviction that a mistake was made. *Steele*, 292 Mich App at 313.

"No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17. "The constitutional privilege against self-incrimination protects a defendant from being compelled to testify against himself or from being compelled to provide the state with evidence of a testimonial or communicative nature." *People v Burhans,* 166 Mich App 758, 761-762; 421 NW2d 285 (1988).

Michigan's constitutional provision against self-incrimination is applied consistently with and "no more liberally than the Fifth Amendment of the United States Constitution." *People v Geno*, 261 Mich App 624, 628; 683 NW2d 687 (2004). "In *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), the United States Supreme Court created a set of prophylactic safeguards to insure protection of the Fifth Amendment right to be free from compelled self-incrimination during custodial interrogation." *People v Cheatham*, 453 Mich 1, 10; 551 NW2d 355 (1996).

The trial court concluded that defendant was not in custody when she made her inculpatory statements, and defendant does not challenge that ruling on appeal. Rather, defendant challenges the admission of her statements on grounds that they were involuntary.[1]

"Involuntary confessions . . . may never be used, both because the police broke the law but more importantly because an involuntary confession is always of questionable 'trustworthiness.' " *People v Reed*, 393 Mich 342, 355; 224 NW2d 867 (1975); see also *People v Switzer*, 135 Mich App 779, 784; 355 NW2d 670 (1984). "The requirement that a defendant's statement be voluntary is based on the recognition that there are means, ranging from outright physical brutality to more refined and subtle methods, for overcoming a defendant's will." *People v Manning*, 243 Mich App 615, 625; 624 NW2d 746 (2000) (quotation marks and citation omitted). In *People v Walker* (*On Rehearing*), 374 Mich 331, 338; 132 NW2d 87 (1965), our Supreme Court held that when a defendant contends that statements made were involuntary, the trial court must conduct a hearing outside the presence of the jury to determine

---

[1] Defendant's brief on appeal discusses caselaw relevant to determining whether a defendant was in custody, but she makes no argument that the trial court erred by finding that she was not in custody. Instead, defendant's entire argument focuses on whether she voluntarily "waive[d] her rights." Because defendant does not challenge the trial court's ruling that defendant was not in custody—and a defendant who is not subject to custodial interrogation need not be read her *Miranda* rights and, therefore, need not voluntarily waive those rights—we construe defendant's argument as contending that her confession, rather than her waiver, was involuntary.

the issue of voluntariness. Here, the trial court held a *Walker* hearing and concluded that defendant's statements to police were made voluntarily.

This Court has found that "a confession is involuntary if obtained by any sort of threat or violence, by any promises, express or implied, or by the exertion of any improper influence." *People v Frazier*, 270 Mich App 172, 182; 715 NW2d 341 (2006) (quotations marks and citation omitted). A confession must be the product of an essentially free and unconstrained choice, and it must be made "without intimidation, coercion, or deception." *People v Akins*, 259 Mich App 545, 564; 675 NW2d 863 (2003). Courts must evaluate the totality of the circumstances in order to determine whether the confession was the result of an essentially free choice or was compelled by overcoming a defendant's capacity for self-determination. *Geno*, 261 Mich App at 628.

In *People v Cipriano,* 431 Mich 315, 334; 429 NW2d 781 (1988), our Supreme Court set forth the following non-exhaustive list of factors that should be considered in determining the voluntariness of a statement:

> the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

Defendant argues that her low intelligence quotient (I.Q.) level and lack of previous interaction with the police made her susceptible to coercion by Detective Harvey. Forensic psychologist Dr. Stephanie Howell, who interviewed defendant as part of a competency exam before trial, testified that she performed an intellectual assessment of defendant and found her I.Q. to be 65, with a range between 61 and 71. Howell also reviewed defendant's special education records from school and found that a 1992 I.Q. test resulted in a score of 62 and a 1995 test resulted in a score of 56. Howell explained that the scores and defendant's level of functioning placed defendant in the range of a mild intellectual disability. Howell said that, generally, people with intellectual disabilities are more suggestible and more acquiescent, and she described defendant as agreeable and eager to please. According to Howell, defendant told her that the police repeatedly called for an interview, that the detective yelled at her, and that she did not understand the meaning of "experimentation" in an apology letter that the detective asked her to write. Howell testified that defendant told her that she thought that she could get arrested for walking out of the police station, was tired during the interview, and only admitted to penetrating the complainant so that Harvey would leave her alone. According to Howell, defendant said she would have walked out if the detective had explained the charges against her better.

At trial, Harvey described defendant as initially being calm and confident during the interview, and that her demeanor changed after admitting to touching the complainant, at which point she became upset. Harvey explained that his strategy in the interview was to put defendant

at ease by minimizing her actions and acting empathetic towards her; he told her that the touching happened long ago while she was experimenting and that he did not think that she was the type to make that mistake now. Harvey testified that he was aware of defendant's learning disability and recalled that he mentioned it to her a number of times.

Viewing this evidence as it relates to whether defendant's confession was voluntary, we recognize that defendant's mild intellectual disability, as well as her lack of previous interrogations by the police, were factors that could have influenced her responses to Harvey's questions, particularly given that he admittedly employed strategies to encourage defendant to provide a confession. Thus, these factors militate in favor of finding that defendant's confession was coerced. But these are only two of the factors we are to consider, and they do not, without more, establish that defendant's confession was involuntary.

Rather, voluntariness is based on the totality of the circumstances. *Geno*, 261 Mich App at 628. And when viewing the totality of the circumstances, we conclude that defendant's confession was a product of her own free will. As noted by the trial court, defendant consulted with her attorney before the interview, voluntarily presented herself, and was repeatedly informed that she was free to leave. Detective Harvey testified that defendant attended the interview of her own volition, he informed her that she did not have to participate, and he had her sign forms stating that she could leave because she was there voluntarily. An advice of rights form with defendant's initials and signature was admitted; it described defendant's *Miranda* rights and stated that she was voluntarily cooperating and could leave at any time.

Harvey also testified that, during the interview, he was aware that he had an intellectual advantage over defendant, but he made sure that she was suitable for questioning by asking her background information before commencing the interview. According to Harvey, he ascertained that he could interview defendant because she was in college to be a nurse's aide, she could read and write, she had a job and a child, and she had been married. In other words, prior to interviewing defendant, Harvey assessed defendant's level of functioning in other areas of her life to determine whether she could meaningfully participate in an interview given her intellectual functioning. These were valid and appropriate considerations, especially because Dr. Howell testified that defendant's level of functioning—graduating high school, performing at a job, and having relationships as a wife and parent—were things she considered in determining that defendant had a mild intellectual disability rather than a moderate or severe intellectual disability. Also, defendant's ex-husband testified that defendant worked intermittently, cared for their daughter, drove, cooked, cleaned the house, was mostly responsible for paying the bills, and communicated with him by text message after their divorce. This evidence of defendant's ability to function in ordinary areas of life supports that defendant was able to exercise her own free will in deciding to speak with Harvey, remaining throughout the interview, and disclosing her behavior with complainant to Harvey.

Also, none of the other *Cipriano* factors suggested that defendant's confessions was involuntary. The questioning was not prolonged; it lasted for 2½ hours, which apparently included the time it took Harvey to take defendant's confession. There is no evidence that defendant was detained before giving her statement. There is no evidence that defendant was intoxicated, drugged, or ill at the time of the interview. Although Dr. Howell testified that defendant told her she was tired, there is no evidence that defendant was deprived of food, sleep,

or medical attention at the time of the interview. Lastly, there is no evidence that defendant was physically abused or threatened with abuse before or during the interview.

To the contrary, after viewing the video of defendant's interview, the trial court noted that Harvey was courteous and accommodating to defendant and that he did not coerce defendant. The trial court also observed that defendant discussed her cognitive impairment during the interview. The trial court found that defendant's discussion with Harvey demonstrated her understanding of the process—despite her intellectual disability—and that her admission was the result of a knowing discussion distinguishing experimentation from molestation, and clarifying what touching was.[2] Thus, although Harvey's use of the interview strategy that he described may have made it easier for defendant to decide to confess, the evidence suggests that Harvey's actions did not overcome defendant's ability to exercise her free choice to continue denying that she violated the complainant. For these reasons, we conclude that Harvey's empathetic approach and validation of defendant's struggles were not sufficient to compel a confession by overcoming a defendant's capacity for self-determination, *Geno*, 261 Mich App at 628, and the trial court did not err by denying defendant's motion to suppress her statement to the police.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien

---

[2] While this Court evaluates the record to determine whether a statement was voluntary, "we also defer to the trial court's superior ability to view the evidence and witnesses." *People v Peerenboom*, 224 Mich App 195, 198; 568 NW2d 153 (1997). Defendant does not contest any of the trial court's factual findings on appeal.